**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | | |
|---|---|---|
| ANTIFUN LIMITED T/A PREMIUM VAPE | X | |
| Plaintiff | \| | Civil Action No.: 1:22-cv-00057 |
| v. | \| | |
| WAYNE INDUSTRIES LLC and | \| | **AMENDED COMPLAINT** |
| DOUGLAS RUTH | \| | |
| Defendants | X | |

## I. Introduction

The Plaintiff, Antifun Limited T/A Premium Vape, seeks to recover money

from the Defendants based on the Defendants' breach of contract and fraud.

## II. The Parties

1.      The Plaintiff, Antifun Limited T/A Premium Vape ("Premium") is a company with

a principal place of business in Auckland, New Zealand.

2.      The Defendant, Wayne Industries LLC ("Wayne Industries") is a company

registered in Wyoming which does business in New York.

3.      The Defendant Douglas Ruth ("Mr. Ruth") is an individual residing at 345 W. 30th

Street, Apartment 6b, New York, NY 10001. Upon information and belief, Mr. Ruth is the sole

owner and operator of Wayne Industries.

## III. Jurisdiction and Venue

4.      This Court has subject- matter jurisdiction over this case by virtue of the diversity

of citizenship of the parties, pursuant to 28 U.S.C. 1332(a)(2), in that the matter in controversy

exceeds $75,000.00 and is between citizens of this State and a citizen of a foreign state.

5.      Venue is proper in this district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. §

1391(a) and (b) because the Defendant, Douglas Ruth, resides in this District, and a substantial

part of the events and omissions giving rise this Complaint occurred in this District.

1

## IV. Facts

6.      In May of 2021, based on an agreement between the parties (the "Agreement"), Premium wired $48,000.00, to an account provided by Mr. Ruth, to purchase flavored JUUL vape pods from the Defendants ("pods"). See Exhibits 1 and 11.

7.      The Agreement between the parties was formed after Mr. Ruth offered to sell Pods to Premium which Premium accepted. Evidence of the Agreement includes, but is not limited to, Exhibits 1-8, and 11.

8.      The terms of the Agreement called for Mr. Ruth to ship pods to Premium at the rate of $23.00 per pack including shipping cost. Goods to be shipped via air freight or courier ASAP after payment is made. See Exhibits 1 and 11.

9.      In June of 2021, based on the same Agreement, Premium wired $93,559.00 to an account provided by Mr. Ruth to purchase Juul flavoured pods at a rate of between $7.25 and $15.50 per pack. See Exhibit 1 and Exhibit 3 for the invoice from Wayne related to this order.

10.     The very first time that Mr. Ruth reached out to Premium was by an unsolicited Facebook message that he sent from his personal account to Kevin Mooney, the manager of Premium. See Exhibit 2.

11.     In the message that Mr. Ruth sent to Mr. Mooney, Mr. Ruth said: "Hi- I noticed you have trouble keeping Mango 5% in stock. Is your owner interested in buying in bulk? I can supply directly from the Juul distributor in either Russia or Ukraine". Exhibit 2

12.     Mr. Mooney and Mr. Ruth began speaking on Whatsapp. See Exhibit 8. In their conversation, nowhere does Mr. Ruth state that he is acting on behalf of Wayne Industries. In multiple places during the conversation he states things like "I am based in New York", and "I buy directly from the distributor" (emphasis added). Mr. Ruth, through this language, led Premium to

reasonably believe they were contracting directly with Mr. Ruth. It was only later where Mr. Ruth began using Wayne Industries' name.

13.     Although he later denied it, Mr. Ruth was intimately involved in shipments of the pods and had intricate knowledge of the shipment of Premium's orders. See Exhibit 7 for an example of a Whattsapp chat where Mr. Ruth talks in detail about what he has organized regarding the shipping of a Premium order. He sends a copy of the Airway Bill (AWB) which is the document airlines and Customs use to clear the goods through various air ports. The chat says that he attaches the air way bill which he has sent to Dave who is the freight forwarder Premium used for bulk shipments. Mr. Ruth goes on to say the shipment will be sent on Etihad Airways which is a large airline from United Arab Emirates. He says it will depart Moscow on Sunday and arrive in Auckland, New Zealand (AKL) on the 15th/16th. Exhibit 7.

14.     The pods are manufactured and distributed by a company called Juul Labs Inc. ("Juul"). A company called Babylon is an authorized distributor of Juul in Russia. Mr. Ruth told Mr. Mooney that he sourced his pods from Babylon or from another company in Russia called Vardex which is a large retail chain. Premium later found out that Mr. Ruth actually purchased pods from another company called Modern Way Trade in St. Petersburg who in turn purchased pods from Babylon and Vardex.

15.     The Defendants only shipped half of the pods for the May payment, and failed to ship any pods to Premium for the June Payment.

16.     Prior to the shipments that are the subject of this case, Premium paid for other shipments of pods to the Defendants. For the first shipment, Premium made payment to the personal PayPal account of Mr. Ruth. For subsequent shipments, Premium either made payment

to an account of Wayne Industries, or, since October of 2020, to another account as instructed by Mr. Ruth.

17.     On the occasions where Premium made payment to accounts other than those owned by Wayne Industries or Mr. Ruth, Premium made payment to the accounts of creditors of Mr. Ruth and/or Wayne Industries in order to satisfy preexisting debts of the Defendants.

18.     Mr Ruth sent all invoices sent to Premium, except for the invoice for the $48,000.00 order, with Wayne Industries' name on the invoices. See Exhibit 3 for one example of an invoice sent by Wayne Industries. The only reason Mr. Ruth did not send the $48,000.00 invoice with Wayne Industries name on it was, as Mr. Ruth said, to "keep it off my US account books". Mr Ruth created an invoice for the $48,000.00 order and sent it to Mr. Mooney from Mr. Ruth's Whatsapp account. He left Wayne Industries name off of it solely to avoid leaving a paper trail. See Exhibit 12.

19.     In total, the Defendants received or were enriched in the amount of $117,559.00 for pods that they did not deliver.

20.     The Defendants knew that Premium intended to sell the pods in New Zealand, and knew or should have known that Premium would lose profit by not receiving the pods.

21.     Premium lost approximately $373,000.00 in revenue and $256,000.00 in profit as a result of not receiving the pods.

22.     At all relevant times, the Defendants were engaging in the above while in New York.

23.     Mr. Ruth induced Premium to pay make the above payments knowing that Wayne Industries would not be able to ship the pods. At the time Wayne Industries made the Agreement with Premium, it had been in default on its obligations to its supplier from Russia. Mr. Ruth never

disclosed this to Premium prior to Premiums payments. Instead, Mr. Ruth led Premium to believe that he and Wayne Industries were in good standing with the supplier, Modern Way Trade.

24.     When Mr. Ruth said that he could ship directly from Modern Way Trade, he in fact had no such ability because he owed Modern Way Trade money for other shipments to clients other than Premium, and he knew that Modern Way Trade would not ship to Premium unless those prior shipments were paid for and also unless new payment was made to cover Premium's shipments. Had Premium known that Mr. Ruth didn't have the ability to have the pods shipped, and that he didn't actually own the pods, they never would have sent money to purchase the pods.

25.     Premium learned that the Defendants used part of Premium's payments not to ship to the pods to Premium, but to pay Modern Way Trade for delinquent amounts that Wayne Industries owed Modern Way Trade as a result of prior shipments to other clients of Wayne Industries. See Exhibit 4.

26.     Premium learned from Modern Way Trade that Mr. Ruth had sent them fictitious wire transfer bank receipts which made it look like Mr. Ruth had made payment to them to induce shipments, when Mr. Ruth had in fact not made payment. See Exhibit 4. These actions damaged the relationship between the Defendants and Modern Way Trade, which, in turn, had a foreseeable impact on Premium who was damaged as a result of Modern Way Trade's refusal to make shipment to clients of the Defendants.

27.     Premium only discovered this after the Defendants failed to have the pods shipped to Premium.

28.     Although he later denied stating that he owned the pods, Exhibit 5 contains Whatsapp messages from Mr. Ruth to Mr. Mooney where Mr. Ruth states "Yes sir. I have plenty of Mango at the warehouse in Saint Petersburg". See Exhibit 5. "Mango is a pod flavor. In another

message, to try and show he owned the pods, Mr. Ruth sent Mr. Mooney a photo of a large number of boxes saying "We grabbed a crazy amount of Mango this week". See Exhibit 5.

29.     When Mr. Ruth stated that "I can supply directly from the Juul distributor", this statement was false because 1) he did not own the pods like he claimed, 2) he was in default on his obligations to his supplier Modern Way Trade.

30.     Mr. Ruth instructed Premium to make the above mentioned $117,559.00 to an account in China. This was done to avoid a record of the transaction, and was also likely done to conceal assets and prevent future collection of the received funds, or both.

31.     Exhibit 6 is a message from Mr. Ruth to Mr. Mooney where Mr. Mooney asks why Mr. Ruth wants payment to be made to an account in China, and Mr. Ruth states: "Mostly to keep a chunk of this payment off my US account books- goes straight to the purchaser in Moscow so alleviates another wire from me to him". See Exhibit 6.

32.     After the Defendants failed to ship the pods to Premium when due, Mr. Ruth, on October 14, 2021, told Premium that he personally would repay Premium for their loss.

33.     No phone number or website for Wayne Industries appears online. Although Wayne Industries is located in Wyoming, a public records search of Mr. Ruth shows that he never lived in Wyoming and appears to have no connection with that state.

34.     An online search shows no connection between Mr. Ruth and Wayne Industries and his Linkedin page makes no mention of Wayne Industries. See Exhibit 9. The State of Wyoming Secretary of State site also shows no connection between Mr. Ruth and Wayne Industries. See Exhibit 10.

35.     Although the Wyoming Secretary of State website lists Wayne Industries as active, it appears, based on the above, that Wayne Industries has ceased operations. Wayne Industries

failed to give notice to Premium, and likely failed to give notice to other creditors, of its termination of operations.

## V. Causes of Action

## Count 1. Breach of Contract

36.     The Defendants had a contract to deliver pods to Premium in exchange for receiving the above payments. The Defendants failed to ship $117,559.00 worth in pods after receiving payment in that amount from Premium. Premium also lost $373,000.00 in revenue and $256,000.00 as a result of the Defendants' failure to ship the pods.

37.     Mr. Ruth fails to maintain and respect Wayne Industries as a separate legal entity, but rather, use its assets as if they were their own personal assets. Mr. Ruth also does not follow corporate formalities in his management of Wayne Industries, and fails to keep Wayne Industries adequately capitalized. A prime example of the failure to follow corporate formalities and basic good business practices is Mr. Ruth's instructing Premium to make payment to China to keep it "off my US account books". Mr. Ruth then created an invoice that did not have Wayne Industries name on it to avoid a paper trail.

38.     There is not even a phone number or website listed for Wayne Industries online, and they appear to be solely a shell company used by Mr. Ruth to hide his assets, or, in the alternative, a company that he only pretended to be associated with.

39.     The listing for Wayne Industries on the Wyoming Secretary of State site has no evidence of Mr. Ruth's involvement in Wayne Industries, and Mr. Ruth's LinkedIn page makes no mention of his involvement with Wayne Industries. See Exhibits 9 and 10.

40.     Direct liability should be imposed on Mr. Ruth as his communications, described above, where he initially doesn't disclose any entity that he is acting on behalf of, led Premium to reasonably believe they were contracting directly with him.

41.     In addition to his direct liability, the corporate veil should be pierced, and Mr. Ruth should be held personally liable for breach of contract.

## Count 2. Breach of Warranty

42.     Mr. Ruth warranted that he owned the pods that he offered to sell to Premium. He breached that warranty by failing to own the pods, and is liable to Premium as a result under NY UCC § 2-213.

## Count 3. Fraud Related to Ownership of the Pods

43.     Prior to making payment for the pods, Mr. Ruth told Premium that he owned the pods. This statement was false, Mr. Ruth knew this statement was false when he made it, and Premium relied on this statement to its detriment in making payment for the pods. Premium would not have agreed to purchase the pods had they known this statement was false. Premium was damaged in the amount of $256,000.00 as a result, and Mr. Ruth and Wayne Industries should be held liable for fraud as a result.

## Count 4. Fraud Related to Relationship with Supplier

44.     Mr. Ruth, knew at the time that he promised to deliver the pods that Wayne Industries was insolvent and in default on its obligations to its distributor. Mr. Ruth, however, made it sound like he was in good standing with the distributor by saying "I can supply directly from the Juul distributor in either Russia or Ukraine". This statement was false. He in fact could not ship directly from the distributor as he was in default to the distributor at the time. Premium

would not have sent money to purchase the pods had they known that the Defendants were in bad standing with the distributor.

### Count 5: Fraudulent Representation of Authority

45.     Mr. Ruth misrepresented his authority to act on behalf of Wayne Industries. It is not even clear that Mr. Ruth actually works for a company called Wayne Industries since an online search reveals no connection between Mr. Ruth and Wayne Industries, and Mr. Ruth's Linkedin page makes no mention of Wayne Industries. No evidence of Mr. Ruth's involvement in Wayne Industries is found on the Wyoming Secretary of State's website.

### Count 6. Fraud on the Distributor

46.     Mr. Ruth sent fictitious bank statements to Juul to make Juul think payment had been sent to Juul for shipments when in fact no payment had been made. This damaged the relationship between the Defendants and Juul, and Premium was foreseeably damaged as a result.

### Count 7. Unjust Enrichment

47.     By obtaining payment from Premium for pods that were never delivered, Wayne Industries and Mr. Ruth were unjustly enriched. Payment was either sent to Mr. Ruth, Wayne Industries, or to the accounts of creditors of Wayne Industries to satisfy preexisting debts of Mr. Ruth and/or Wayne Industries. Premium has a reasonable expectation of repayment of the amounts paid to Mr. Ruth and to Wayne Industries or for their benefit.


WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against Defendants in the amount of $256,000.00, or such other amount determined by the Court to be owed, ,prejudgment interest since August 1, 2021, post judgment interest, and reasonable attorney's fees.

Respectfully Submitted,

/s/ Joseph Perl
Joseph, Perl
Attorney for Plaintiff
Law Office of Joseph Perl
11 Broadway, Suite 615
New York, NY 10004
1-646-822-9570

Dated: March 30, 2022