**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| ANTIFUN LIMITED T/A PREMIUM VAPE   X | |
|       Plaintiff            &#124; | Civil Action No.: 1:22-cv-00057-PAE |
| v.                        &#124; | |
| WAYNE INDUSTRIES LLC and   &#124; | |
| DOUGLAS RUTH            &#124; | |
|      Defendants          X | |

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO THE</u>

## <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

Joseph Perl
Attorney for Plaintiff
11 Broadway, Suite 615
New York, NY 10004
1-646-822-9570

## Table of Contents

**Preliminary Statement**………………………………………………………………………………… 5

**Statement of Facts**………………………………………………………………………………… 5

**Legal Standard**………………………………………………………………………………… 5

**Argument**………………………………………………………………………………….. 6

I. <u>The Amended Complaint States a Claim for Breach of Contract Against Wayne</u>

<u>Industries</u>………………………………………………………………………………… 6

II. <u>The Amended Complaint States a Claim for Breach of Contract Against Mr. Ruth</u>… 9

    A) Mr. Ruth is directly liable for breach of contract………………………………… 9

    B) The corporate veil of Wayne Industries should be pierced leading to Mr. Ruth's liability

       for breach of contract………………………………………………………….. 11

III. <u>The Amended Complaint States a Claim for Breach of Warranty Against the Defendants</u>. 15

IV. <u>The Amended Complaint States a Claim for Fraud Against the Defendants</u>………… 15

    A) Ruth's Fraud………………………………………………………………………15

       1)      Mr. Ruth falsely claimed ownership of the pods……………………… 16

       2)      Mr. Ruth had a duty to tell Premium that he was in default on his

                obligations to his supplier……………………………………………… 17

       3)      Mr. Ruth misrepresented his ability to perform……………………….. 18

    B) Wayne Industries is vicariously liable for Ruth's fraud…………………………20

V. <u>The Amended Complaint States a Claim for Fraud Against the Defendants</u>……… 20

<u>Conclusion</u> ………………………………………………………………………… 21

**Table of Authorities**

**Cases**

*Arbitron, Inc. v. Tralyn Broadcasting, Inc.* 400 F.3d 130 (2d Cir. 2005)                    7

*Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)*                    6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)                    5

*Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996)  16

*Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014)                    5

*Citibank, N.A. v. Nyland (CF8) Ltd., 878 F.2d 620* (2nd Cir 1989)                    21

*Elango Medical PLLC v. Trump Palace Condominium*, 194 A.D. 3d 543 (1st Dept. 2021)
                    16

*Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)                    12

*Genger v. Genger* 76 F.Supp.3d 488, 498 (S.D.N.Y. 2015)                    8

*GreenHunter Energy, Inc. v. Western Ecosystems Tech., 337 P.3d 454, 462 (Wyo. 2014)*
                    3

*Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)*                    6

*Harris v. Pfizer, Inc.*, 2022 WL 488410 (S.D.N.Y. 2022)                    6

*Lewis v. Bogin, 337 F.Supp. 331, 339 (S.D.N.Y. 1972)*                    18

*Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 799 (Wyo. Sup. Ct. 2019)    12

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F.Supp.3d 461 (S.D.N.Y. 2019)             6

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC, 709 F.3d 109, 119–20 (2d Cir. 2013)*                    6

*Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473*                    6

*Propstra v. Dyer*, 189 F.2d 810 (S.D.N.Y. 1951)                    9

*Reynolds-Sitzer v. EISAI, Inc.*, 2022 WL 471530 (N.D.NY. 2022)                    17

*Shear Enterprises, LLC v. Cohen*, 137 N.Y.S.3d 306 (2nd Dep't 2020)                    18

*Smart Coffee, Inc. v. Sprauer*, 140 N.Y.S.3d 376 (N.Y.City Civ.Ct. 2021)                10

*Trend & Style Asia HK Co. Ltd. v. Pacific Worldwide, Inc.,* 2015 WL 4190746 (S.D.N.Y. 2015)
                                                                                       22

*Weinreb v. Stinchfield*, 19 A.D.3d 482, 483 (2nd Dept. 2005)                          10

*651 Bay Street, LLC v. Discenza*, 189 A.D. 3d (2d Dep't 2020)                         17

**Rules and Statues**

Fed. R. Civ. P. 8(a)(3)                                                                22

Fed. R. Civ. P. 9(b)                                                                   17

Fed. R. Civ. P. 12(b)(6)                                                                5

NY UCC § 2-102                                                                          6

NY UCC § 2-204                                                                          6

**Prelimi_nary Statement**

The Plaintiff, Antifun Limited T/A Premium Vape ("Premium"), submits this Memorandum of Law in Support of Premium's Opposition to Defendants', Wayne Industries LLC ("Wayne Industries") and Douglas Ruth's Motion to Dismiss Amended complaint. The facts stated in the Complaint 1) make out breach of contract claims against both Defendants, 2) show liability of Mr. Ruth individually both directly and through a corporate veil piercing claim, 3) show that the Defendants breached an express warranty provided to Premium, 4) show that the Defendants committed fraud on Premium, and 5) show that the Defendants were unjustly enriched through Premium's payments.

## Facts

For the facts, Premium refers the Court to the Amended Complaint and Exhibits filed therewith. The specific facts related to this Opposition are included in the argument section below. In sum, the Amended Complaint gives details about an agreement entered into between the parties whereby Mr. Ruth, initially acting without disclosing his principal, Wayne Industries, promised to ship goods to Premium in exchange for an agreed payment amount. The Defendants failed to have the goods shipped. The Amended Complaint shows that Wayne Industries was likely insolvent when Mr. Ruth solicited payments from Premium, and that Mr. Ruth made multiple misrepresentations to induce Premium to make payment.

## Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 225 (2d Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While "the plausibility standard is not akin to a probability requirement," *id.*, the plaintiff must "nudge[ ] [its] claims across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570. A court must take "factual allegations [in the complaint] to be true and draw all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). In deciding a 12(b)(6) motion, the court also draws all reasonable inferences in the non-moving party's favor. *See N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013)

In resolving a motion to dismiss for failure to state a claim, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. See, e.g., *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F.Supp.3d 461 (S.D.N.Y. 2019).

## <u>Argument</u>

## I. <u>The Amended Complaint States a Claim for Breach of Contract Against Wayne Industries</u>

The Defendants analyze Premium's breach of contract claims under the common law. Because this case involves a sale of goods, however, this case is governed by the Uniform Commercial Code as adopted in New York ("UCC"). NY UCC § 2-102. Regardless of whether the common law or UCC applies, however, the Defendants argument that the complaint does not state a claim for breach of contract is without merit. Under NY UCC § 2-204:

> "(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."

*See also, Arbitron, Inc. v. Tralyn Broadcasting, Inc.* 400 F.3d 130 (2d Cir. 2005) (Under New York's implementation of the UCC, there is a strong presumption that agreements are enforceable even if their price terms are not definite.) Here, paragraphs 6-9 of the Complaint indicate the type of goods sold, the quantity, price, and the method of shipment. Exhibits 1-8 and 11 of the Amended Complaint, which include invoices that Wayne sent to Premium, communications between the parties, and wire information further support the existence of a contract. Since Premium included these as Exhibits to the Amended Complaint, the Court may consider them in deciding on the Defendants' Motion to Dismiss. *Minden Pictures* at 466. It's hard to imagine that Mr. Ruth believes that no contract was formed between the parties when he sent an invoice to Premium, attached as Exhibit 3 to the Amended Complaint, which calls for Premium to make a $93,959.50 payment to Wayne Industries. Mr. Ruth doesn't deny sending this invoice. Also, Exhibit 12 is an invoice for $48,000.00 which, although it does not have Wayne Industries name on it, the Amended Complaint states that Mr. Ruth was the one who created and sent this, see paragraph 18 of the Amended Complaint, and that "He left Wayne Industries name off of it solely to avoid leaving a paper trail." Id. See also exhibit 12. Mr. Ruth does not deny that he was the one who created and sent this invoice.

Premium performed its obligations under the contract by making the agreed payments when due, and Wayne Industries failed to honor its promises to Premium when it failed to have the goods shipped.

*Consideration*: The Defendants repeatedly make the argument that it was a third party, Modern Way Trade in Russia, that shipped the goods to Premium[1], and that Modern Way Trade received most of the money from Premium, and that, therefore, the contract must have not been between Premium and the Defendants. Even ignoring paragraph 13 of the Amended Complaint which details Mr. Ruth's intimate involvement with the shipments of the goods, the Defendants are implying in their argument that a contract can't be formed where payments go to a third party, or where performance is made or facilitated by a third party. If this argument were true, any time a seller used a third party to ship goods, the seller could claim the contract was really between the buyer and the party that shipped the goods.

Without labeling their argument this way, the substance of the Defendants' argument is that third party receipt of payment or third party performance makes the contract lack consideration. Consideration to support an agreement exists where there is either a benefit to the promisor *or* [emphasis added] a detriment to the promisee. *Genger v. Genger* 76 F.Supp.3d 488, 498 (S.D.N.Y. 2015). Here, there was a detriment to Premium when they paid $141,559.50 for the goods. That alone supports consideration. In addition, however, the Amended Complaint states that "On the occasions where Premium made payment to accounts other than those owned by Wayne Industries or Mr. Ruth, Premium

---

[1] Mr. Ruth falsely characterizes the transactions in this case as being between Modern Way Trade and Premium when the Exhibits, including communications between the parties, show that Modern Way Trade was a pre-existing connection of the Defendants, and not of Premium, when the Defendants induced Premium to do business with them.

made payment to the accounts of creditors of Mr. Ruth and/or Wayne Industries in order to satisfy preexisting debts of the Defendants." See also exhibit 6 to the Complaint showing that Mr. Ruth had payment made to a foreign account to keep the transaction "off his books". This shows that the Defendants obtained a benefit from Premium's payments.

*Lost Profits*- The Defendants' claim that Premium is not entitled to claim $373,000.00 in lost revenue, and that they can only claim lost profits, misses paragraphs 20 and 21 of the Amended Complaint as well as the "Wherefore" section. The Amended Complaint does not seek $373,000.00 in lost revenues. Paragraph 20 says: "The Defendants knew that Premium intended to sell the pods in New Zealand, and knew or should have known that Premium would lose profit by not receiving the pods." Paragraph 21 states, "Premium lost approximately $373,000.00 in revenue and *$256,000.00* [emphasis added] in profit as a result of not receiving the pods." The request for relief states "WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against Defendants in the amount of $256,000.00…".

## II. <u>The Amended Complaint States a Claim for Breach of Contract Against Mr. Ruth</u>

A. *Mr. Ruth is directly liable for breach of contract*. An agent is liable on a contract that is formed before the agent discloses the identity of it's principal. *Propstra v. Dyer*, 189 F.2d 810 (S.D.N.Y. 1951). The Complaint in paragraph 10 states: "The very first time that Mr. Ruth reached out to Premium was by an unsolicited Facebook message that he sent from his personal account to Kevin Mooney, the manager of Premium". See Exhibit 2. Paragraph 11 states: "Mr. Mooney and Mr. Ruth began speaking on WhatsApp. See Exhibit 8. In their conversation, nowhere does Mr. Ruth state that he is acting on behalf of Wayne Industries. In multiple places during the conversation he states things like "*I* am based in New York", and "*I* buy directly from the distributor" [emphasis added]. Mr. Ruth, through this

language, led Premium to reasonably believe they were contracting directly with Mr. Ruth. It was only later where Mr. Ruth began using Wayne Industries' name." Premium made their first payment to Mr. Ruth's personal PayPal account. The parties communications went on for around 6 weeks without Mr. Ruth ever disclosing the name of Wayne Industries. Although Mr. Ruth sent invoices to Premium bearing Wayne Industries' name, this was only after the parties had already entered into a contract.

Even if Mr. Ruth had disclosed Wayne Industries' identity prior to entering the sales agreement with Premium, which he did not, an agent for a disclosed principal will still be personally liable "where there is clear and explicit evidence of the agent's intention to be bound as an individual." *Smart Coffee, Inc. v. Sprauer*, 140 N.Y.S.3d 376 (N.Y.City Civ.Ct. 2021) (quoting *Weinreb v. Stinchfield*, 19 A.D.3d 482, 483 (2nd Dept. 2005). Reviewing the facts in the light most favorable to Premium, a reasonable inference can be made that Mr. Ruth expressed an intention to be bound under the parties' agreement. His very first message to Premium, which came from his personal Facebook account, said: "Hi- I noticed you have trouble keeping Mango 5% in stock. Is your owner interested in buying in bulk? *I* [emphasis added] can supply directly from the Juul distributor in either Russia or Ukraine". See Amended Complaint, ¶¶ 10,11, and Exhibit 2 to the Amended Complaint. Mr. Ruth then began further communications with Mr. Mooney on What's app. Paragraph 12 to the amended complaint states that "In their conversation, nowhere does Mr. Ruth state that he is acting on behalf of Wayne Industries. In multiple places during the conversation he states things like "*I* am based in New York", and "*I* buy directly from the distributor" [emphasis added]. He doesn't say something like, "the company I am calling on behalf of, Wayne Industries, buys directly from the distributor". Mr. Ruth had Premium make the first payment to his personal PayPal account. Amended Complaint,

paragraph 16. It was reasonable for Premium, at that point, to assume they were dealing with Mr. Ruth. Paragraph 32 of the Amended Complaint further states that Mr. Ruth promised Premium that he would personally repay Premium for their loss. This combined with the above facts, if true, would be clear and explicit evidence of Mr. Ruth's intention to be bound as an individual. While Mr. Ruth denies, in paragraph 9 of his declaration in support of his Motion to Dismiss, that he ever made this promise, and also makes denials of several other of Premium's claims, a court in deciding a motion to dismiss does not conduct a "trial by affidavit". *Lewis v. Bogin*, 337 F.Supp. 331, 339 (S.D.N.Y. 1972) (quoting *Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473.* ("Only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised.  Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of 'even handed justice.").

B. *In addition to direct liability, the Amended Complaint states facts which lead to a claim of liability for breach of contract against Mr. Ruth through piercing the corporate veil of Wayne Industries.*

Even had Mr. Ruth not shown an intent to be bound and had not initially acted without disclosing Wayne Industries existence, the claim in the Amended Complaint to pierce the corporate veil of Wayne Industries which would also lead to Mr. Ruth's liability, survives a motion to dismiss. Under New York choice of law principles, Wyoming law controls the veil piercing issue in this case because Wayne Industries is a Wyoming Limited Liability Company. *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995). Under Wyoming's two part veil piercing test, the veil of a limited liability company can be pieced when:

(1)      the limited liability company is not only owned, influenced and governed

by its members, but the required separateness has ceased to exist due to

misuse of the limited liability company; and (2) the facts are such that an

adherence to the fiction of its separate existence would, under the

particular circumstances, lead to injustice, fundamental unfairness, or

inequity.

*Mantle v. N. Star Energy & Constr. LLC*, 437 P.3d 758, 799 (Wyo. Sup. Ct. 2019)

(quoting *GreenHunter Energy, Inc. v. Western Ecosystems Tech., 337 P.3d 454, 462*

*(Wyo. 2014).* "In determining whether the two prongs have been met, courts in Wyoming

consider various factors, including fraud, inadequate capitalization,  and the degree to

which the business and finances of the company and the member are intermingled… We

have made clear that each case involving the disregard of the separate entity doctrine

must be governed by the special facts of that case and the district court must complete a

fact-intensive inquiry and exercise its equitable powers to determine whether piercing the

veil is appropriate under the circumstances presented." *GreenHunter Energy, Inc.* at 458.

A court's finding that the factors warrant the LLC's veil piercing will be upheld unless

clearly erroneous. Id. The test focuses on whether the limited liability company has been

operated as a separate entity, or whether the member has instead misused the entity in an

inequitable manner to injure the plaintiff.

With exception of fraud, no single factor is sufficient or required to pierce the

limited liability company's veil, and courts will analyze all of these factors when asked to

impose liability on an limited liability company's members. Id. The Court in Greenhunter

discussed that fraud, in the context of veil piercing, can exist "even in the absence of a

12

duty to speak, if a person does speak, he must speak the truth and make a full and fair disclosure, as half the truth may be a lie in effect." *GreenHunter Energy, Inc.* at 462.

In determining whether a limited liability company is undercapitalized, courts must compare the amount of capital to the amount of business to be conducted and the obligations which must be satisfied.  If the LLC is undercapitalized, or if its members have never attempted to make arrangements to secure sufficient capital, these facts may be evidence that the company was used to screen members from legitimate debt because it is not in reality an autonomous company capable of carrying on its own business. Id.

Regarding intermingling of funds, Funds and assets should be separated and not commingled. *GreenHunter Energy, Inc.* at 463. Failure to maintain an arm's-length relationship between the member and company, as by not keeping separate bank accounts and bookkeeping records, may be weighed along with other factors. *GreenHunter Energy, Inc.* at 464. If the member treats limited liability company property as if it were that person's or company's personal property, a court should consider also this fact.

The facts stated in the Amended Complaint strongly, or, at minimum, plausibly, suggest that, as a whole, the veil piercing test is met under Wyoming law. As discussed above, fraud alone is a factor to be considered in piercing the corporate veil, and fraud in the context of veil piercing can include "constructive fraud" involving a failure to speak. Premium's fraud claims are discussed in more detail below, but, to summarize for purposes of the veil piercing discussion, Mr. Ruth made multiple misrepresentation and failed to disclose facts to Premium, which, had they known the truth of, would not have lost $117,559.00 in out of pocket funds, not including lost profits. Mr. Ruth falsely stated

13

that he owned the pods which he didn't, and even tried to substantiate the lie by sending

Premium a picture of boxes of pods misrepresenting that he owned them. See e.g.,

paragraph 28 to the Amended Complaint and Exhibit 5. Mr. Ruth's fraud alone is a

reason to pierce the LLC as not doing so would create a loss to Premium solely as a result

of Mr. Ruth's cajoling Premium to do business with him.

       Other veil piercing factors are also met here. Paragraph 31 of the Amended

Complaint states: Mr. Ruth had Premium make their payment to an account in China

"Mostly to keep a chunk of this payment off my books". This fact alone suggests that

Wayne Industries isn't keeping money in it's accounts in an amount sufficient for the

business it does. Paragraph 26 of the Amended Complaint and Exhibit 4 also show that

Mr. Ruth sent fictitious wire statements to Modern Way trade to induce shipments. This

also suggests that in reality Wayne Industries didn't have the funds in its account at the

time. At minimum, these facts, taken in the light most favorable to Premium, warrant

allowing Premium to request production of Wayne Industries' bank statements and

similar financial information which is likely to show that Wayne Industries is a sham.

       The Amended Complaint also states facts plausibly suggesting, and warranting

discovery on, the intermingling of Wayne Industries and Mr. Ruth's finances. Paragraph

16 of the Amended Complaint indicates Premium's first payment was to Mr. Ruth's

personal PayPal account. This alone plausibly suggests an intermingling of funds, and

review of Mr. Ruth's and Wayne Industries bank statements are highly likely to shed

more light on the extent of intermingling.

Premium has sufficiently pled a claim to pierce the veil of Wayne Industries leading to Mr. Ruth's liability and the case should proceed to discovery on the issue.

**III. The Amended Complaint States a Claim for Breach of Warranty Against the Defendants**

Under N.Y. UCC § 2-313, Express warranties are created by the seller by: "a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain…". The rule does not require that the promise relate to the physical condition of the goods. As discussed more fully in the fraud section below, section IV, Mr. Ruth falsely claimed ownership of the pods, and Premium relied on that to their detriment. "Ownership" relates to the goods and legal title to them.

**IV. The Amended Complaint States a Claim for Fraud Against the Defendants**

A.  *Ruth's Fraud*: The Amended Complaint makes out all the elements of a fraud claim against Mr. Ruth. Notwithstanding whether or not Mr. Ruth was acting in an agency capacity for Wayne Industries when he committed the fraud, an agent is liable for the agent's own wrongful acts. *See, e.g. Elango Medical PLLC v. Trump Palace Condominium*, 194 A.D. 3d 543 (1st Dept. 2021).

To prove fraud under New York law, "a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance. *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, 98 F.3d 13 (2d Cir. 1996).

1) *Mr. Ruth Falsely claimed ownership of the pods*.

The Amended Complaint in paragraph 28 states "Although he later denied stating that he owned the pods, Exhibit 5 contains Whatsapp messages from Mr. Ruth to Mr. Mooney where Mr. Ruth states "Yes sir. I have plenty of Mango at the warehouse in Saint Petersburg". See Exhibit 5. "Mango is a pod flavor. In another message, to try and show he owned the pods, Mr. Ruth sent Mr. Mooney a photo of a large number of boxes saying "We grabbed a crazy amount of Mango this week". See Exhibit 5." Paragraph 29 of the Amended Complaint states that "When Mr. Ruth stated that "I can supply directly from the Juul distributor", this statement was false because 1) he did not own the pods like he claimed, 2) he was in default on his obligations to his supplier Modern Way Trade." Paragraph 42, which shows Premiums detrimental reliance, states that "Premium would not have agreed to purchase the pods had they known this statement was false. Premium was damaged in the amount of $256,000.00 as a result…" These facts meet the elements of fraud, and, combined with the exhibits attached in support of the Amended Complaint, make out a claim of fraud with particularity under Fed. R. Civ. P. 9(b). The "who", "what", "when", "where", and "how" of the fraud are all contained in the Amended Complaint. *Reynolds-Sitzer v. EISAI, Inc.*, 2022 WL 471530 (N.D.NY. 2022). The Complaint and Exhibits such as text messages show it was Mr. Ruth who committed the fraud, and the text messages show the time he committed it, and the Amended Complaint states that a substantial part of the events and omissions giving rise this case occurred in this District. The truth was that Modern Way Trade was the one that owned the pods, and Mr. Ruth had no right or ability to have them shipped, since, as the Amended Complaint states, he was in default in payments to Modern Way Trade.

False statements solely relating to intent to perform are not actionable under New York law. Bridgestone at 19. However, a misrepresentation of a present fact, not of future intent, which induced a contract, is not duplicative of a contract claim. *651 Bay Street, LLC v. Discenza*, 189 A.D. 3d (2d Dep't 2020) (property seller's false statement that property was free of existing leases at time of sale was an actionable misrepresentation). Saying that Mr. Ruth promised to deliver the pods, when he had no intent or ability to do so, while true, is fundamentally distinct from Premium's claim that Mr. Ruth lied about owning the pods. The former leads to a breach of contract while the later goes to fraud. A seller's ownership or title to goods being sold is a present fact extraneous to the contract. It's common for sellers to make a contract to provide goods they don't own. After entering an agreement, these sellers may purchase the goods from third parties to fulfill their obligations to their customers. Claiming he owned the goods is claiming he had the legal right to control the goods, and also implies he has the goods in stock. Had Premium known this was not the case, especially during pandemic supply shortages and logistical issues, they could have chosen to purchase from another supplier who really did own the goods that they sell.

As a result of the above, Premium's claim for fraud based on misrepresentation of ownership should not be dismissed.

2) *Mr. Ruth had a duty to tell Premium that he was in default to Modern Way Trade and couldn't in fact source pods through them.* A duty to disclose will generally arise when a one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party. *Harris v. Pfizer, Inc.*, 2022 WL 488410 (S.D.N.Y. 2022).

Here, not only did Mr. Ruth state that he owned the pods and that "We grabbed a crazy amount of Mango this week", he showed Premium a picture of a room full of boxes making it look like he had the goods in stock to sell to Premium. This led Premium to believe the goods were ready to be shipped to them. Mr. Ruth had a duty to tell Premium that these boxes were not theirs or were owed to other customers.

3) *Mr. Ruth misrepresented his ability to perform.* In addition to Premium's claim for fraud based on Mr. Ruth's false claim of ownership of the pods, Count 3, Premium added a separate count for fraud, Count 4, which relates to Mr. Ruth's and Wayne Industries' inability to perform. Count 4 in the Amended Complaint is captioned as "Fraud Related to Relationship with Supplier". The body of Count 4 states that Mr. Ruth did not have the ability to perform when he promised he could ship directly from the supplier. Misrepresentation of a party's ability to perform is actionable under New York as a misrepresentation of a present fact. The case of *Shear Enterprises, LLC v. Cohen*, 137 N.Y.S.3d 306 (2nd Dep't 2020) (reversing the Supreme Court's dismissal of Plaintiff's fraud claim) is instructive. In *Shear Enterprises*, the defendants were out of business and unable to complete their orders when they solicited cash from the Plaintiffs solely to enrich themselves by paying off other debt. The court stated: "The gravamen of the allegations supporting the claim is not, as in *Cronos Group, Ltd. v. XComIP, LLC* (156 A.D.3d 54, 62, 64 N.Y.S.3d 180 [1st Dept. 2017] ), that defendants "made a promise while harboring the concealed intent not to perform it." Rather, plaintiff asserts that defendants misrepresented their very "ability to perform," an allegation that supports a non-duplicative fraudulent inducement claim." *Shear Enterprises* at 309.

What happened in this case is very similar to what happened in Shear Enterprises. Paragraph 44 of the Amended Complaint states: "Mr. Ruth, knew at the time that he promised to deliver the pods that Wayne Industries was insolvent and in default on its obligations to its distributor. Mr. Ruth, however, made it sound like he was in good standing with the distributor by saying "I can supply directly from the Juul distributor in either Russia or Ukraine. This statement was false. He in fact could not ship directly from the distributor as he was in default to the distributor at the time. Premium would not have sent money to purchase the pods had they known that the Defendants were in bad standing with the distributor". Paragraph 28 states: When Mr. Ruth stated that "I can supply directly from the Juul distributor", this statement was false because 1) he did not own the pods like he claimed, 2) he was in default on his obligations to his supplier Modern Way Trade. Like in *Shear Enterprises*, Mr. Ruth also enriched himself with Premium's money by paying off a preexisting debt of his. See paragraphs 17 and 47 of the Amended Complaint.

Exhibit 4 to the Amended Complaint is damaging for Mr. Ruth. This shows a WhatsApp conversation between Mr. Mooney and a representative of Modern Way Trade. Mr. Mooney had reached out to Modern Way Trade to find out why the goods hadn't arrived. The representative tells him: "Our work with Douglas (Mr. Ruth) was structured as follows: We received money from his clients[2], and we sent goods to them. For us, all the incoming amounts were Douglas's money. At some point, there were more orders than money sent by Douglas' clients, including you. We have already purchased with our own money a large consignment of goods that he ordered, including FRUIT X2, and a debt of $143,455 was formed behind him. When the money did not arrive for a long time, *we stopped sending the goods* [emphasis added]. Douglas fed us promises

---

[2] This message is also evidence that it was Ruth's clients that were supposed to receive shipments, and that his clients, including Premium, did not have a direct contractual relationship with Modern Way Trade.

for a long time, but no money came. We have decided to sell the goods purchased with our funds. In the end, we sold the rest of the goods for less that what he owed us. Thus ended our relationship."

So, Mr. Ruth knew he was in bad standing with Modern Way Trade when he solicited payments from Premium. He misrepresented both his ability to have the goods shipped and the nature of his relationship with Modern Way Trade. He made it sound like he was in good standing with them when in fact the relationship ended after he went into substantial debt with them and on multiple occasions didn't keep his word to make payment.

Premium has stated a claim for fraud against Ruth for his misrepresentation of his ability to pay and of his standing with Modern Way Trade.[3]

*B) Wayne Industries is also liable for fraud*. As the principal of Mr. Ruth at the time, Wayne Industries would be liable for Mr. Ruth's acts done in furtherance of the principal/agent relationship. *Citibank, N.A. v. Nyland (CF8) Ltd., 878 F.2d 620* (2nd Cir 1989). As discussed above, Wayne Industries remained an undisclosed principal prior to the contract being formed. Although it was undisclosed, and Mr. Ruth showed an intent to be personally bound, Wayne Industries is still also liable for the acts of its agent.[4]

## V. __The Amended Complaint States a Claim for Unjust Enrichment Against the Defendants__

---

[3] Premium, in the original Complaint, also mentioned that Wayne Industries had failed to ship pods to another customer of theirs. Premium subsequently removed the claim. Mr. Ruth, without any factual support, stated in his Motion to Dismiss Amended Complaint that Premium's removal of this statement in the Amended Complaint must mean that it was fabricated to begin with. Mr. Ruth fails to consider other reasons why a party might remove content from the original complaint in drafting an Amended Complaint. Mr. Ruth in fact messaged Mr. Mooney saying that Premium, Mr. Ruth, and Don (the owner of No Limit Funding), "have a fairly large sum tied up over there." By "there", Mr. Ruth meant with Modern Way Trade. Mr. Mooney interpreted this to mean that No Limit Funding also wasn't receiving their shipments. After submitting a letter alleged to be from No Limit Funding, which should not be considered on a motion to dismiss, Premium accepted the letter as authenticate for now, subject to further discovery, and removed the statement.
[4] Wayne Industries' is likely insolvent now, so it may not matter, but this is something that could be learned through discovery.

"A claim for unjust enrichment requires that "the defendant benefitted ... at the

plaintiff's expense [and] ... that equity and good conscience require restitution… An

indispensable ingredient of such a claim is that as between the two parties involved there

must be an injustice. The essence of a cause of action for unjust enrichment is that "one

party possesses money ... that in equity and good conscience ... should not have [been]

obtained or possessed because it rightfully belongs to another."

*Trend & Style Asia HK Co. Ltd. v. Pacific Worldwide, Inc.,* 2015 WL 4190746 (S.D.N.Y. 2015).

Here, the Amended Complaint states that the Defendants benefitted from receiving Premium's

funds without providing Premium with the goods they purchased. Allowing them to keep these

funds or benefit from them by extinguishing their pre-existing debts would create injustice.

The Defendants argue that Premium's unjust enrichment claim is duplicative of its breach

of contract claim and should therefore be dismissed. However, because at this stages the

Defendants are denying the existence of a contract, Premium may plead in the alternative under

Fed. R. Civ. P. 8(a)(3). *Trend & Style Asia HK Co. Ltd.* at 5,6.

## <u>Conclusion</u>

The Amended Complaint states a claim for breach of contract against the

Defendants for failure to ship goods sold. Mr. Ruth is personally liable for this breach as

the agent of an undisclosed principal and by showing a clear intent to be bound. The

Amended Complaint also states a claim for fraud against the Defendants based on Mr.

Ruth's misrepresentations of his ownership of the goods, of his standing with the

supplier, and of his ability to perform. The Defendants were also unjustly enriched with

Plaintiff's funds.

WHEREFORE, Plaintiff respectfully requests that the Defendants' Motion to Dismiss the

Amended Complaint be denied.


Respectfully Submitted,

/s/ Joseph Perl
Joseph, Perl
Attorney for Plaintiff
Law Office of Joseph Perl
11 Broadway, Suite 615
New York, NY 10004
1-646-822-9570

Dated: May 31, 2022